# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

VICTOR PAVLOVITCH MYTYUK,

    Petitioner,

v.

ICE FIELD OFFICE DIRECTOR,

    Respondent.

Case No. C11-1927-RSM-JPD

REPORT AND RECOMMENDATION

## I. INTRODUCTION AND SUMMARY CONCLUSION

Petitioner Victor Pavlovitch Mytyuk is a native and citizen of Ukraine who is being detained by the United States Immigration and Customs Enforcement ("ICE") pursuant to a final order of removal. On November 17, 2011, petitioner filed a pro se Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, challenging the lawfulness of his continued detention. (Dkt. No. 4.) Respondent has filed a Return Memorandum and Motion to Dismiss, arguing that petitioner is lawfully detained pursuant to 8 U.S.C. § 1231(a)(1)(C) because of his continued refusal to complete a travel document application and his rigorous efforts to prevent ICE from removing him. (Dkt. No. 15 at 6.) After careful review of the entire record, the Court recommends that petitioner's habeas petition be DENIED, respondent's motion to dismiss be GRANTED, and that this matter be DISMISSED with prejudice.

## II. BACKGROUND AND PROCEDURAL HISTORY

Petitioner is a native and citizen of the Ukraine who entered the United States on March 28, 2001, as a visitor with authorization to remain in the country until September 14, 2001. (Administrative Record ("AR") at R434-35, R445.) On July 5, 2007, petitioner was taken into ICE custody and served with a Notice to Appear, charging him as subject to removal from the United States for remaining in the United States longer than permitted, and for failing to comply with the conditions of his admission. (AR at L5-11.)

On January 23, 2008, an Immigration Judge ("IJ") denied petitioner's request for asylum, withholding of removal, and relief under the Convention Against Torture, and ordered him removed to the Ukraine based on the charges contained in the OSC. (AR at L110.) Petitioner appealed the IJ's decision to the Board of Immigration Appeals ("BIA"), which affirmed the IJ's decision and dismissed the appeal on April 22, 2008. (AR at L214-15.) Petitioner appealed the BIA's decision to the Fifth Circuit Court of Appeals, which affirmed the BIA's decision on April 28, 2009. (AR at R247-50.)

While petitioner's appeal was pending before the Fifth Circuit, ICE made a formal request for issuance of travel documents for petitioner's return to the Ukraine. (AR at R109, R411.) On May 20, 2008, the Embassy of Ukraine requested that petitioner complete a passport application. (AR at R387, R390, R411.) Petitioner refused to complete the passport application required by the Ukraine for issuance of travel documents. (AR at R407-414.) Thereafter, ICE made numerous attempts to complete petitioner's travel document request and repeatedly warned petitioner of the consequences for refusing to cooperate, but petitioner continued to refuse to cooperate. (AR at R105, R130, R147, R181, R196, R201, R213, R226, R235, R242, R251, R257, R262, R264, R274, R285, R330.)

1    On September 9, 2008, petitioner filed a habeas corpus petition in the United States
2    District Court for the Western District of Louisiana, challenging the lawfulness of his detention.
3    (AR at R205, R281-82.) The district court denied the petition on December 30, 2008, and
4    petitioner appealed the decision to the Fifth Circuit. (AR at R205, R281.) On September 21,
5    2009, the Fifth Circuit affirmed the district court's denial of habeas corpus, holding that
6    petitioner had not acted in good faith to secure travel documents and the removal period was
7    lawfully extended under 8 U.S.C. § 1231(a)(1)(C). (AR at 280-81.)

8    On September 2, 2010, petitioner was convicted of 14 counts of Failure to Depart in the
9    United States District Court for the Western District of Louisiana, in violation of 8 U.S.C. §
10   1253(a)(1)(B), and was sentenced to 12 months in prison. (AR at R371.) ICE placed an
11   immigration detainer with the United States Marshall Service in Lake Charles, Louisiana. (AR
12   at R333.) On January 18, 2011, petitioner was transferred from criminal custody to ICE custody.
13   (AR at R414.)

14   On January 21, 2011, and February 22, 2011, petitioner was served with a Warning for
15   Failure to Comply and Instruction Sheet, advising him of specific requirements to complete
16   within thirty days in order to comply with his obligation to assist in obtaining travel documents.
17   (AR at R421, R424-25.) However, petitioner continued to fail to comply with his duty to assist
18   ICE in obtaining travel documents for his return to the Ukraine. (AR at R421.)

19   On April 14, 2011, ICE reviewed petitioner's custody status and determined that he
20   would remain detained in ICE custody due to his continued refusal to cooperate. (AR at R407-
21   14.) In addition, ICE determined that petitioner's "removal period has been suspended and he
22   will remain in failure to comply status pursuant to [8 C.F.R. §] 241.4(g)." (AR at R408.)

To date, ICE has been unable to secure petitioner's cooperation. (Dkt. No. 15, Ex. 1; AR at R461, R455.) ICE asserts that "[o]ther than his refusal to cooperate, there are currently no barriers that would prevent Petitioner's removal to the Ukraine and there is a significant likelihood that he will be removed to that country within the reasonably foreseeable future." *Id.* at 2.

### III. DISCUSSION

Section 1231(a)(1)(A) states that "[e]xcept as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A). During the removal period, continued detention is required. 8 U.S.C. § 1231(a)(2)("During the removal period, the Attorney General shall detain the alien."). Under Section 1231(a)(6), the Attorney General may detain an alien beyond the 90-day removal period. INA § 241(a)(6), 8 U.S.C. § 1231(a)(6).

In *Zadvydas v. Davis*, 533 U.S. 678, 121 S. Ct. 2491, 2505, 150 L. Ed. 2d 653 (2001), the Supreme Court considered whether the post-removal-period statute, 8 U.S.C. § 1231(a)(6), authorizes the government "to detain a removable alien *indefinitely* beyond the removal period or only for a period *reasonably necessary* to secure the alien's removal." *Zadvydas,* 533 U.S. at 682. The petitioners in *Zadvydas* could not be removed because no country would accept them. Thus, removal was "no longer practically attainable," and the period of detention at issue was "indefinite" and "potentially permanent." *Id.* at 690-91. The Supreme Court held that 8 U.S.C. § 1231(a)(6), which permits detention of removable aliens beyond the 90-day removal period, does not permit "indefinite detention." *Id.* at 689-697. The Court explained that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at

699. The Supreme Court further held that detention remains presumptively valid for a period of six months. *Id.* at 701. After this six-month period, an alien is eligible for conditional release upon demonstrating "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. The burden then shifts to the Government to respond with sufficient evidence to rebut that showing. *Id.* at 701.

Notwithstanding *Zadvydas*, under 8 U.S.C. § 1231(a)(1)(C), "the removal period shall be extended . . . and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure . . . ." In *Pelich v. INS*, 329 F.3d 1057 (9th Cir. 2003), the Ninth Circuit held that "when an alien refuses to cooperate fully and honestly with officials to secure travel documents from a foreign government, the alien cannot meet his or her burden to show there is no significant likelihood of removal in the reasonably foreseeable future." *Pelich*, 329 F.3d at 1059. The Ninth Circuit explained that the concerns of indefinite detention underlying the Supreme Court's decision in *Zadvydas* do not exist when the alien "has the 'keys [to his freedom] in his pocket' and could likely effectuate his removal by providing the information requested by the [Government]." *Pelich*, 329 F.3d at 1060 (citation omitted)*; see also Lema v. I.N.S.*, 341 F.3d 853, 857 (9th Cir. 2003)(holding that 8 U.S.C. § 1231(a)(1)(C) authorizes continued detention of a removable alien as long as the alien fails to cooperate fully and honestly with officials to obtain travel documents). The Court concluded that "*Zadvydas* does not save an alien who fails to provide requested documentation to effectuate his removal. The reason is self-evident: the detainee cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future if the detainee controls the clock." *Id.*

Here, the record contains substantial evidence that petitioner has consistently refused "to make timely application in good faith for travel or other documents" and the removal period was lawfully extended under 8 U.S.C. § 1231(a)(1)(C). Petitioner's continued refusal to complete a passport application since the removal period began on January 18, 2011, when he was released from criminal custody into ICE custody, has prevented the government from effecting his removal from the United States to the Ukraine. Given petitioner's lack of cooperation, he cannot satisfy his burden under *Zadvydas* to show that there is no significant likelihood of removal in the reasonably foreseeable future. *See Pelich,* 359 F.3d at 1057. Indeed, "[w]e cannot know whether an alien's removal is a 'remote possibility,' *Zadvydas*, 533 U.S. at 690, 121 S. Ct. 2491, until the alien makes a full and honest effort to secure travel documents. A particular alien may have a very good chance of being removed, but if that alien is refusing to cooperate fully with officials to secure travel documents, neither the INS nor a court can sensibly ascertain the alien's chance of removal." *Lema*, 341 F.3d at 856. Accordingly, petitioner's detention is not indefinite, and the Court must deny habeas relief.

## IV.  CONCLUSION

For the foregoing reasons, the Court recommends that petitioner's petition for writ of habeas corpus be DENIED, respondent's motion to dismiss be GRANTED, and that this matter be DISMISSED with prejudice. A proposed order accompanies this Report and Recommendation.

DATED this 8th day of February, 2012.

*/s/ James P. Donohue*
JAMES P. DONOHUE
United States Magistrate Judge